**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MATTHEW E. JACKSON, JR. and | ) | |
| VELMA L. JACKSON, | ) | |
| Plaintiffs, | ) | Civil Action No. 13-746 |
| | ) | |
| vs. | ) | District Judge Cathy Bisson |
| | ) | Magistrate Judge Robert C. Mitchell |
| FRANCES E. JACKSON, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

ROBERT C. MITCHELL, United States Magistrate Judge.

### I. Recommendation

On March 3, 2014, plaintiffs, Matthew E. Jackson, Jr. and Velma L. Jackson, filed a motion for summary judgment [ECF No. 25]. Defendant, Frances E. Jackson, responded thereto on March 31, 2014 [ECF No. 31]. Plaintiffs claim that there is no issue of material fact and they are entitled to judgment as a matter of law as to all claims asserted. This Court ordered supplemental briefing on the applicable statute of limitations, to which the parties submitted briefs on May 8, 2014. *See* [ECF Nos. 34, 35]. Plaintiffs responded to defendant's brief on May 15, 2014 [ECF No. 36].

After careful review of the plaintiffs' motion for summary judgment, brief in support, and defendant's response, and upon independent review of the evidence of record, for the following reasons, it is respectfully recommended that plaintiffs' motion for summary judgment [ECF No. 25] be granted in part and denied in part. It is specifically recommended that plaintiffs be granted summary judgment to their claim for an imposition of a constructive trust and that an accounting be completed to determine the scope of expenditures made in connection to the

1

property and the tax status of the property. It is further respectfully recommended that plaintiffs be denied summary judgment as to all other counts and that defendant be granted summary judgment on Counts 1, 3, 4, 5, 6, 7, 8, 9 and 10.

## II. Report

### A. Background

Generally, this action is centered upon a sibling dispute over their late mother's real property. Plaintiffs, Matthew and Velma Jackson, are brother and sister and initiated this action *pro se*[1] against their oldest sister, Frances, for an array of claims in connection with defendant's alleged failure to transfer real property located in Sewickley, Allegheny County, Pennsylvania equally between the siblings after their mother's death. Compl. [ECF No. 1] at ¶ 13. Plaintiffs have lived in the house located on the property in question since 2002, and continue to inhabit the house. Pls.' Concise Statement of Material Fact [ECF No. 27] at ¶ 10. Before her death, their mother executed a warranty deed conveying the real property to defendant on February 10, 2000. *Id*. at ¶ 19; Pls.' Concise Statement of Material Fact [ECF No. 27] at ¶ 5. The reasons for the transfer of real property are in great disagreement, as is the case with most sibling disputes. Plaintiffs claim that defendant exploited her mother's rapidly deteriorating health and used her "status" as the eldest child to persuade her mother and siblings to temporarily transfer the property to her until their mother's death, upon which she agreed to transfer the property equally among her siblings, and that she subsequently reneged on that promise. *Id*. at ¶ 19. Contrarily, defendant claims that the whole scheme of transferring their mother's property to defendant was plaintiff Velma Jackson's idea in order to avoid estate taxes upon their mother's death and avoid

---

[1] While plaintiffs are considered *pro se* for purposes of this action, this Court notes that both plaintiffs are registered Pennsylvania attorneys.

possible judgments and liens against the siblings individually that may have encumbered the property if they gained title to it.[2] Def.'s Resp. to Mot. for Summ. J. [ECF No. 31] at 2-3.

In any event, the deed to the property was recorded on July 26, 2002.[3] Compl. [ECF No. 1] at ¶ 20. Approximately one month later, on August 29, 2002, their mother passed away. *Id*. While plaintiffs and defendant spend a considerable amount of time squabbling about conversations they had with each other regarding the property after their mother's death, it is not necessary for this Court to delve into this mishmash of proverbial "he-said/she-said," as it does nothing to enhance the Court's analysis and seriously distracts this Court from the legal issues at hand. Defendant did not transfer the property to her siblings after their mother's death, and is still the record owner of the property as of this date. Pls.' Concise Statement of Material Facts [ECF No. 27] at ¶ 11. Plaintiffs claim that they made considerable improvements to the house from November 2011 to March 2011 and expended approximately $20,000 in doing so. *Id*. at ¶ 21. Plaintiffs fail to detail in their briefs what improvements were made to the property. At

---

[2]    Specifically, plaintiff Velma Jackson indicated in an e-mail to plaintiff Matthew Jackson that the "reason that the house was put in Frances [sic] name, is [sic] so no liens or judgments from Velma, Douglas [(one of the siblings)] or you would be put on the property that was being left to the grandchildren. Frances did not work for herself and was more likely than you, Douglas and me to have a steady flow of income. Was it a good decision to put the house in Frances' name, "Yes",[sic] it was a terrifically good decision, because Ricky [(one of the siblings)] died and 1/5 of the value of the house would have been taxable to Ricky's estate, Douglas has a judgment that would have been a lien on the property, I had debts that would have been converted to judgments and then to liens on the property should I have not been judgment proof and you must answer for yourself about whether you would have caused any liens to be placed on the family property had you been judgment proof." Def.'s Resp. to Mot. for Summ. J. [ECF No. 31] at 3 (quoting Appendix Vol. 2, Ex. 12).

[3]    While plaintiffs assert that "someone" recorded the deed, *see* Pls.' Concise Statement of Material Fact [ECF No. 27] at ¶ 7, this ignores the fact that Matthew Jackson admitted in an e-mail to defendant that "I learned that Velma had recorded the deed without you signing a written agreement with us." Def.'s Resp. to Concise Statement of Material Fact [ECF No. 32] at ¶ 7 (quoting Appendix Vol. II, Ex. 11). While who recorded the deed makes no difference as to the legal outcome of this case, it is an illustration of how plaintiffs, specifically Velma Jackson, were the parties who concocted this scheme to avoid the property from becoming encumbered, and only filed suit after defendant stopped paying taxes on the property.

some point, defendant stopped paying the taxes on the property and in or around 2012, due to said delinquent taxes, Quaker Valley School District filed a Writ of Scire Facias Sur Tax Claim and Statement against defendant for her failure to pay the property taxes on the property. *Id*. at ¶ 33.[4]

On June 3, 2013, plaintiffs, proceeding *pro se,* set forth a litany of claims against their sister including: (1) unjust enrichment; (2) "defendant as a constructive trustee;" (3) "breach of duty to keep informed;" (4) "breach of duty of loyalty and to avoid self-dealing;" (5) "breach of duty to exercise reasonable care and prudence;" (6) promissory estoppel; (7) intentional infliction of emotional distress; (8) "fraud and conversion of property and funds of plaintiff Velma Jackson;" (9) fraud; and (10) invasion of privacy. Compl. [ECF No. 1] at 23-33. Plaintiffs additionally request that this Court exercise its equitable powers and establish a constructive trust for the real property and name all of the siblings as trustees to the property. *See* Compl. [ECF No. 1] at 34.

On March 3, 2014, plaintiffs filed a motion for summary judgment, to which defendant responded on March 31, 2014. On April 17, 2014, this Court directed the parties to submit briefing addressing the applicable statute of limitations for all claims set forth by plaintiffs. Both parties filed their supplemental briefing on May 8, 2014, and plaintiffs responded to defendant's brief on May 15, 2014. Therefore, as all of the issues have been addressed and the period for discovery has closed, the present motion is ripe for disposition. For the following reasons, it is respectfully recommended that plaintiffs' motion for summary judgment be granted in part and denied in part, that an accounting be completed to ascertain the tax liabilities and other expenditures made in connection with the property and this Court enter summary judgment in favor of defendant for Counts 1, 3, 4, 5, 6, 7, 8, 9, and 10.

---

[4]        The extent to which the taxes are delinquent is unclear from the record.

B. <u>Jurisdiction</u>

This Court has jurisdiction over this matter pursuant to diversity jurisdiction, 28 U.S.C. § 1332, as plaintiffs are residents of the Commonwealth of Pennsylvania and defendant is a resident of the state of Georgia, and the amount in controversy exceeds the statutory limit.

C. <u>Standard of Review</u>

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A moving party is entitled to summary judgment if he demonstrates that "the nonmoving party has failed to make a sufficient showing of an essential element of [his] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party bears the burden of adducing palpable evidence "establishing that there is a genuine factual dispute for trial" and may not merely rely upon "bare assertions or conclusory allegations" to survive summary judgment. *Hogan v. Twp. of Haddon*, 278 F.App'x 98, 101 (3d Cir. 2008) (citing *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982)). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied [only] when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." *Boykins v. Lucent Techs., Inc.*, 78 F.Supp.2d 402, 407 (E.D.Pa. 2000). The court should draw inferences "in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) *cert. denied* 507 U.S. 912 (1993).

Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp.*, 477 U.S. at 326. In line with this rule, a district court may also enter summary judgment *sua sponte* in a non-moving party's favor when there is no genuine issue of material fact and the non-moving party is entitled to judgment as a matter of law. *See Gibson v. Mayor and Council of City of Wilmington*, 355 F.3d 215, 222 (3d Cir. 2004). However, summary judgment "will not be granted to a non-moving party without 'first placing the adversarial party on notice that the court is considering a *sua sponte* summary judgment motion.'" *Id*. (quoting *Chambers Dev. Co. v. Passaic Cnty. Utils. Auth.*, 62 F.3d 582, 584 n.5 (3d Cir. 1995)). In the instant case, defendant did not move for summary judgment.[5] However, in light of the statute of limitations issues presented in this case, this Court required supplemental briefing on this issue, to which both parties complied. Because plaintiffs have been put on notice and were given an opportunity to rebut any statute of limitations argument, in addition to submitting their original briefing, it is proper for this Court to recommend that summary judgment be granted in favor of defendant.

D. Discussion

Plaintiffs set forth the following claims against defendant: (1) unjust enrichment; (2) "defendant as a constructive trustee;" (3) "breach of duty to keep informed;" (4) "breach of duty

---

[5] It must be noted that defendant, who is represented by counsel, not only failed to file her own motion for summary judgment when given the opportunity to do so, but also failed to respond to plaintiffs' supplemental briefing regarding the statute of limitations, lacked, misconstrued or misapplied the applicable law, and in the response brief to plaintiffs' motion for summary judgment failed to cite to even one case throughout her brief. This waste of scare judicial resources is not welcomed in such a case in which the claims are barred by the statute of limitations or have failed to state a claim and could have been subject to a Federal Rule of Civil Procedure 12(b) motion. It must also be noted that the acrimony between the parties is palpable from the record, and may have been amplified by the poor manner in which this case proceeded from its inception in the state court.

of loyalty and to avoid self-dealing;" (5) "breach of duty to exercise reasonable care and prudence;" (6) promissory estoppel; (7) intentional infliction of emotional distress; (8) "fraud and conversion of property and funds of plaintiff Velma Jackson;" (9) fraud; and (10) invasion of privacy. Compl. [ECF No. 1] at 23-33.

Each argument will be addressed in turn, with the exception of counts 2 through 5 which will be discussed together, and we conclude that summary judgment in favor of defendant is appropriate on all but a very limited claim.

### 1. Count 1: Unjust Enrichment

Under Pennsylvania law, the elements necessary to state a cause of action for unjust enrichment are as follows: (1) benefits must be conferred on the defendant by the plaintiff; (2) the appreciation of such benefits by the defendant; and (3) the acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Erie Ins. Exchange*, 74 A.3d 157, 169 (Pa.Super. 2013) (quoting *Stoeckinger v. Presidential Fin. Corp. of Delaware Valley*, 948 A.2d 828, 833 (Pa.Super. 2008). Whether a claim for unjust enrichment has been set forth depends on the "unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." *Ibid.* The element of most import is whether the "enrichment of the defendant is *unjust.*" *Ibid.* (emphasis in original). The cause of action for a claim of unjust enrichment "accrues when the defendant receives and retains the benefits." *Del Collo v. Philadelphia Housing Auth.*, 2012 WL 8700068, at *6 (Pa. Commw. Nov. 9, 2012) (citing, *inter alia, Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alt., Inc.*, 832 A.2d 501, 507 (Pa.Super. 2001)); *see also Dugan v. Towers, Perrin, Forster & Crosby, Inc., 2012 WL 6194211*, at *15 (E.D.Pa. Dec. 11, 2012). "This principal, in

addition to bearing upon the timeliness of Plaintiffs' claims, emphasizes that a claim for unjust enrichment focuses upon the circumstances of a defendant's *receipt* of benefits rather that the defendant's subsequent use of those benefits." *Dugan*, 2012 WL 6194211, at *15 n. 11 (emphasis in original).

Where it is found that a defendant has been unjustly enriched, "the law implies a contract, which requires the defendant to pay the plaintiff the value of the benefit conferred." *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 532 (Pa. 2010). Therefore, because a claim for unjust enrichment is an implied contract legal theory, it is subject to the four-year statute of limitations under 42 Pa.C.S. § 5525(4). *See* 42 Pa.C.S. § 5525(4) ("An action upon a contract implied in law, except an action subject to another limitation specified in this subchapter").

The discovery rule serves to toll a statute of limitations until a plaintiff knows or reasonably should know that he has been injured and by what cause he has been injured. *See Wilson v. El-Daief*, 964 A.2d 354, 361 (Pa. 2009). A plaintiff's awareness of his injury is generally fact intensive and therefore ordinarily a jury question. *Id*. "However, courts may resolve the matter at the summary judgment stage where reasonable mind could not differ on the subject. . . . The party relying on the discovery rule bears the burden of proof." *Id*. at 362. (citations omitted). Many Pennsylvania courts apply a "reasonable-diligence requirement" compelling the plaintiffs to establish that they exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Cochran v. GAF Corp*., 666 A.2d 245, 249 (Pa. 2005).

While in plaintiffs' complaint, they argue that a constructive trust should be imposed based on defendant's unjust enrichment, because they later argue a separate cause of action for a

constructive trust, the Court will construe plaintiffs' complaint as setting forth a separate unjust enrichment claim and will discuss it here. Under their theory of unjust enrichment, plaintiffs claim that their interest in the property was conferred to defendant, defendant accepted such an interest and retained the interest in the property and it would be inequitable for her to retain the property because it was implied that the property would be redistributed to all siblings after their mother's death. The cause of action accrued upon the death of the parties' mother, because that was the first time that defendant was able to receive and retain the alleged benefits conferred to her, *i.e.*, her siblings interest in the house, because as under plaintiffs' theory, the event that giving rise to defendant transferring the property shares was their mother's death on August 29, 2002. Therefore, it was incumbent upon plaintiffs to bring suit for defendant's unjust enrichment of their shares of the property within four years of their mother's death, or August 29, 2006, unless an exclusion, such as the discovery rule, applies. Plaintiffs did not file suit in this Court until June 3, 2013, approximately seven years after the statute of limitations had expired. Further, plaintiffs have not met their burden of proof that the discovery rule should apply in this case. Plaintiffs knew from the time of their mother's death that they were injured, as defendant failed to transfer the property interest to them. Reasonable minds could not differ that plaintiffs were unable to discover their injury. Accordingly, because the discovery rule does not apply and plaintiffs brought their claims against defendant seven years after the statute of limitation had expired, it is respectfully recommended that summary judgment be granted in favor of defendant for plaintiffs' unjust enrichment claim.

> **2. Counts 2 – 5: Constructive Trust, Breach of the Duty to Keep Informed, Breach of the Duty of Loyalty and to Avoid Self-Dealing, and Breach of the Duty to Exercise Reasonable Care and Prudence**

The Pennsylvania Supreme Court has adopted the Restatement of Trusts (Second), § 44 (1959) which provides:

> (1)     Where the owner of an interest in land transfers it inter vivos to another in trust for the transferor, but no memorandum properly evidencing the intention to create a trust is signed, as required by the Statute of Frauds, and the transferee refuses to perform the trust, the transferee holds the interest upon a constructive trust for the transferor, if
>
> > (a)     the transfer was procured by fraud, duress, undue influence or mistake, or
> >
> > (b)     the transferee at the time of the transfer was in a confidential relation to the transferor, or
> >
> > (c)     the transfer was made as security for an indebtedness of the transferor.

Restatement (Second) of Trusts § 44 (1959); *see also Truver v. Kennedy*, 229 A.2d 468, (Pa. 1967); *Silver v. Silver*, 219 A.2d 659 (Pa. 1966); *Metzger v. Metzger*, 14 A.2d 285 (Pa. 1940).

Additionally, a constructive trust may be imposed under a theory of recovery sounding in unjust enrichment. *Yohe v. Yohe*, 353 A.2d 417, 420-21 (Pa. 1976). Under this theory,

> [t]he imposition of a constructive trust is an equitable remedy designed to prevent unjust enrichment. A constructive trust arises "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." Restatement of Restitution § 160 (1937). This theory of constructive trusts does not require an equity court to find an intention or agreement to create a trust; instead, a court may impose a constructive trust as a remedy to prevent the unjust enrichment of one party.

*Moreland v. Metrovich*, 375 A.2d 772, 775 (Pa. Super. 1977) (citing *Stauffer v. Stauffer*, 351 A.2d 236 (Pa. 1976) (internal citations and quotation marks omitted)); *see also Buchanan v. Brentwood Federal Savings and Loan Assoc.*, 320 A.2d 117 (Pa. 1974); *Peoples First Nat. Bank & Trust Co. v. Ratajski*, 160 A.2d 451 (Pa. 1960).

Plaintiffs seemingly argue that a constructive trust was created either by the existence of a confidential relationship between their mother and defendant, or alternatively, that if this court finds there was no specific intention or agreement to hold the property in trust, a constructive trust arises because to find otherwise would unjustly enrich defendant. Defendant argues that a claim for constructive trust is barred by the statute of limitations and laches. Each legal theory will be addressed in turn.

A confidential relationship may be established as a matter of law or a matter of fact. *Truver,* 229 A.2d at 474. To be established as a matter of law, there must be a certain recognized fiduciary relationship between the parties such as a "trustee and cestui que trust, attorney and client, and guardian and ward." *Id.* A confidential relationship may also exist as a matter of fact where "one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on the one side, or weakness, dependence or justifiable trust on the other." *Id.* A close family relationship "does not per se justify recognition of a confidential relationship." *Moreland*, 375 A.2d at 775 (citing *Truver*, 229 A.2d at 474). In such cases, the plaintiff must demonstrate that the confidential relationship exists as a matter of fact. *Truver*, 229 A.2d at 474.

Here, plaintiffs claim that defendant and her mother were in a confidential relationship as a matter of fact. Specifically, they allege that defendant convinced her mother to deed the property to her with the intention and implicit understanding that defendant would deed the property to the "intended beneficiaries immediately after" their mother's death. Compl. [ECF No. 1] at ¶ 106. Additionally, plaintiffs contend that their mother's "age coupled with her terminal illness and weakened physical condition, render[ed] her easily manipulated by [d]efendant[, as she] placed a high degree of trust, faith and confidence in her eldest offspring,

[d]efendant." Compl. [ECF No. 1] at ¶ 108. However, the evidence of record is inconsistent with the statements plaintiffs made in their complaint. It is clear that it was plaintiff Velma Jackson, an estate attorney living close to her mother in Pennsylvania at the time of the conveyance, who convinced her mother to transfer the property to defendant to avoid any sort of liens or judgments that may have attached to the property in question. Plaintiff Velma Jackson admitted in an e-mail that the reason the property was transferred was to avoid the property from being encumbered with judgments and liens from the other siblings. There is no evidence of record that defendant, who at the time in question lived in Georgia, exuded any "overmastering dominance" or that their mother was dependent upon defendant or had some sort of justifiable trust in her daughter's experience with estate and property law. Additionally, plaintiff Velma Jackson signed as a witness to the deed transferring the property to defendant and plaintiff Matthew Jackson stated that Velma recorded the deed. *See* 2/10/2000 Deed [ECF No. 31-1] at 1-2. Therefore, because the record is entirely devoid of any evidence illustrating a confidential relationship between defendant and her mother as a matter of fact, a constructive trust will not be imposed under this legal theory.

The Court does, however, find that a constructive trust arose under a theory of unjust enrichment. Defendant admits in her testimony that it was her mother's wish to transfer the property equally to her children, and it was transferred to defendant before their mother's death to avoid estate taxes and also because other siblings had judgments that could have been attached to the property as liens. While it was not indicated at the time of the transfer when the property was to be transferred to all of the siblings, as plaintiffs contend, it was to be at their mother's death and no evidence disputes this. It would unjustly enrich defendant to have full title to the entire property. It must also be noted that defendant was willing to transfer the property in

question at many times, and relied on plaintiffs, as attorneys, to draw up a deed transferring title equally among the siblings. Plaintiffs did not do so, and defendant did not take any steps on her own to have the property transferred. Defendant paid most, if not all of the taxes on the property for the time period, and it was not until the taxes became delinquent due to defendant's nonpayment that this lawsuit was filed. Regardless, it is clear that the property was to be transferred equally to all of the siblings and that to allow defendant to maintain full legal title would unjustly enrich her. Therefore, a constructive trust arose by unjust enrichment.

Next, the Court must consider whether the imposition of a constructive trust is barred by the statute of limitations or by laches.

42 Pa.C.S.A. § 5526(3) provides a five year statute of limitations to "[a]n action to enforce any equity or redemption or any implied or resulting trust as to real property." 42 Pa.C.S.A. § 5526(3). A constructive trust is one that the law implies and is bound by a five year statute of limitations. This five year statute of limitations does not begin to run "until the time the grantee has breached the promise to reconvey or until the time the grantor should reasonably have known of the grantee's wrongful retention of the property." *Truver*, 229 A.2d at 475 (citation omitted).

Here, the trust arose on August 29, 2002, when the trust came into existence upon the parties' mother's death and defendant failed to reconvey the property to her siblings. Therefore, plaintiffs had until August 29, 2007 to bring an action to impose a constructive trust. Plaintiffs did not file suit in this Court until June 3, 2013, therefore their suit is untimely by approximately six years. Plaintiffs' argument that the statute of limitations does not begin to run until they are dispossessed of their property does not apply here, but rather applies to the doctrine of laches, and will be discussed *infra*. *See Chambers v. Chambers*, 176 A.2d 673, 676 (Pa. 1962)

("It is well settled that equity does not impute *laches* to one in peaceful possession[.]") (emphasis added).

Because the statute of limitations has expired on plaintiffs' constructive trust claim, plaintiffs must "overcome the presumption that [their] claim is barred in equity." *Debellis v. Maula*, 2008 WL 3980865, at \*6 (M.D.Pa. 2008). Plaintiffs' claim for the imposition of a constructive trust will be barred by laches if defendant's "position or rights are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against [her]." *Silver v. Korr*, 139 A.2d 552, 555 (Pa. 1958). The doctrine of laches falls under the general rule that "a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based." *Pocono Int'l Raceway, Inc. v. Pocono Produce Inc.*, 468 A.2d 468, 471 (Pa. 1983); *see also Cope v. Anderson*, 331 U.S. 461, 464 (1947) ("equity will withhold relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy."). Where, as here, the statute of limitations period has expired, "the defendant in an action for equitable relief enjoys the benefit of a presumption of inexcusable delay and prejudice. In that case, the burden shifts to the plaintiff to justify its delay and negate prejudice." *E.E.O.C. v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 80 (3d Cir. 1984).

Plaintiffs' argue that their possession of the property tolls the statute of limitations "for so long as such possession continues." Pls.' Supp. Br. [ECF No. 34] at 1-2.

In *Chambers v. Chambers*, a man and woman who believed themselves husband and wife but were not legally married, owned real property and conveyed such property solely to the wife to avoid the possibility of the property being reached by loan creditors. *Chambers*, 176 A.2d at

676. The Pennsylvania Supreme Court found that the imposition of a constructive trust was not barred by the doctrine of laches because the man resided on the premises and "[i]t is well settled that equity does not impute laches to one in peaceful possession[.]" *Id.* Possession is notice to all of "the possessor's equitable right, and he need only assert them when he may find occasion to do so." *Stolarick v. Stolarick*, 363 A.2d 793, 798-799 (Pa.Super. 1976).

Here, it is undisputed that plaintiffs have been in continuous possession of the property during the time in question. Therefore, laches does not bar the imposition of a constructive trust in this case.[6]

Other factors that must be given consideration are the delinquent taxes, tax payments made, improvements made and other expenditures made in connection with the property. There is testimony that defendant made tax and insurance payments on the property during the time in question. Additionally, plaintiffs claim that they have expended certain amounts for improvements to the property. Further, it appears that the property remains in a delinquent tax status. Because justice requires the reimbursement and/or offsetting of expenditures in connection with the property, any conveyance made of the property should be made conditional upon payment of these expenditures. *See Godzieba v. Godzieba*, 143 A.2d 344, 348 (Pa. 1958) (citing Restatement (First) of Restitution § 158 (1937) ("A person is entitled to specific restitution of property from another or to the product of such property of such property only on

---

[6] It must be noted that there are a total of five children in the family. However, only Matthew and Velma Jackson are named plaintiffs in the suit. One of the two unnamed siblings has since passed away and is survived by one minor child. None of these unnamed parties in interest have asserted any claim in this litigation. The Court notes that any claims regarding the imposition of a constructive trust would be barred by the statute of limitations and likewise barred under the doctrine of laches, as none of the other siblings or parties in interest has been in possession of the property in question during the applicable period which would bar the application of the doctrine of laches.

condition that he compensate the other for expenditures with reference to the subject matter which have inured to his benefit, to the extent that justice between the parties requires.")).

Additionally, because the parties have not explicitly set forth the amounts spent and owed in connection with the property, an accounting of the property from 2000 to the present is appropriate.

As far as plaintiffs' claims regarding the alleged breach of the duty to keep informed, breach of duty of loyalty and to avoid self-dealing, and breach of the duty to exercise reasonable care and prudence, plaintiff provides no legal basis, and this Court has found none, for the position that these causes of action are available when a constructive trust based upon unjust enrichment is imposed by the Court through its equitable powers. Plaintiffs therefore have not met their burden of proof to show that they are entitled to summary judgment as a matter of law, and defendant is entitled to summary judgment. Accordingly, it is respectfully recommended that plaintiffs be granted summary judgment on their claim for a constructive trust and that an accounting on the property be completed from the year 2000 through the present and that defendant be granted summary judgment on Counts 3 to 5.

### 3. Count 6: Promissory Estoppel

Generally, the doctrine of promissory estoppel allows a plaintiff to enforce a promise in the absence of consideration. *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 717 (Pa. Super. 2005). To maintain a claim of promissory estoppel, the plaintiff must aver the following elements:

> (1) the promisor made a promise that he should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise.

*Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (2000). While Pennsylvania law has not specifically delegated a statute of limitations for a promissory estoppel action, the Pennsylvania Supreme Court has applied a four-year statute of limitations set forth in 42 Pa.C.S. § 5525, as "the doctrine sounds in contract law and we hold that, like other contract actions, the statute of limitations for a cause of action in promissory estoppel is governed by [section] 5525." *Id*. at 610.

Here, plaintiffs claim for promissory estoppel is set forth as follows:

> From May 2011 to June 2012, [d]efendant sent emails to [p]laintiffs, leading [p]laintiffs to believe that [d]efendant would finally do what [she] has always been equitably required to do. Plaintiffs reasonably relied upon [d]efendant's promises. When [d]efendant made the representations described above, [d]efendant knew them to be false and [d]efendant made those misrepresentations with the intention to deceive [p]laintiffs and to induce [p]laintiffs to act in reliance on those representations in the manner herein alleged or with the expectation that [p]laintiffs would so act. In June 2012, [d]efendant changed her position, by seeking to stand on a different set of facts and falsely denying that she promised to transfer the entrusted real property to the intended owners. Plaintiffs are justified in continuing to rely on the facts initially represented to them by [d]efendant. Defendant is estopped to deny the initial set of facts, which are evidenced by [d]efendant's own writings. Enforcement of [d]efendant's promises is necessary to avoid injustice.

Compl. [ECF No. 1] at ¶¶ 148-152. While these statements mimic bald assertions, in reading the complaint in its entirety, it makes clear that the promise plaintiffs allege was justifiably relied upon was defendant's promise to convey the real property after their mother's death. The only conduct that plaintiffs claim that they took on reliance of that promise was the $20,000 expenditure in repairs on the property. *See* Compl. [ECF No. 1] at ¶¶ 37, 38.

Defendant argues that the statute of limitations has expired on this claim, because it stems from defendant's original "promise" to transfer the property upon their mother's death in 2002.

Further, plaintiffs have not shown reliance on any "fresh promises" made by defendant to transfer the property, and to the extent that they can show damages and/or reliance, said damages pre-date any "fresh promises" made by defendant to transfer the property. Def.'s Supp. Br. [ECF No. 35] at 4-7.

Plaintiffs baldly respond: "The record contains much evidence of Defendant's false promises and representations about re-conveying the property, in accordance with [their mother's] intention to leave the property to all of her offspring, equally, within the four year limitations period prior to [p]laintiffs bringing suit against [d]efendant." Pls.' Supp. Br. [ECF No. 34] at 4.

It is axiomatic that there must be *detrimental reliance* on a defendant's promise in order to state a claim for promissory estoppel, *i.e.*, the plaintiffs took some sort of action to their detriment in reliance on defendant's promise. Here, the only reliance of record is the purported improvements made on the property on reliance of defendant's promise to transfer the property to all of the siblings equally. It is not enough to state a claim for promissory estoppel by plainly stating that the plaintiffs relied on the promise without taking some sort of action on that promise. While those improvements for which plaintiffs purportedly spent $20,000 were made between January 2011 and March 2011, the "fresh promise" to transfer the property made by defendant occurred after that fact, on May 5, 2011.[7] *See* Compl. [ECF No. 1] at ¶¶ 37 – 38. Plaintiffs could not have relied upon it to undertake the repairs. There is no evidence that plaintiffs suffered a detrimental reliance, *i.e.*, that they did or refrained from doing something, because of any promise made by the defendant to transfer the property. Accordingly, it is

---

[7] The complaint specifically states: "On May 5, 2011, [d]efendants [sic] sent an email to [p]laintiffs, Douglas and Matthew Jackson III. That email represents the first time, since Sarah Jackson's death on August 29, 2002, that [d]efendant indicated a readiness to comply with her promise to transfer the deed to her siblings – though [d]efendant's intentions continued to be vague." Compl. [ECF No. 1] at ¶ 38.

respectfully recommended that defendant be granted summary judgment on plaintiffs' claim of promissory estoppel.

### 4. Count 7: Intentional Infliction of Emotional Distress

The Pennsylvania Supreme Court has recognized the tort of intentional infliction of emotional distress as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Hoy v. Angelone*, 720 A.2d 745, 753 (Pa. 1998) (quoting the Restatement (Second) of Torts § 46(1) (1965)).[8]  The high court has noted that "[o]nly if conduct which is extreme or clearly outrageous is established will a claim be proven. . . . '[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id.* (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa.Super. 1987)).  It is for the court to determine whether the degree of conduct rises to the level of "extreme and outrageous." *See Salerno v. Philadelphia Newspapers*, 546 A.2d 1168, 1171 (Pa.Super. 1988).  The statute of limitations for a claim of intentional infliction of emotional distress is two years. *See* 42 Pa.C.S. § 5524; *Kleish v. Select Portfolio Servicing, Inc.*, 419 F.App'x 268, 271 (3d Cir. 2011) (recognizing Pennsylvania's two year limitations period for intentional infliction of emotional distress claims).

---

[8]     While federal courts sitting in diversity have advocated the Restatement (Second) of Torts Section 46 and while that section has been recognized by the Pennsylvania Supreme Court, it has not been expressly adopted. *See Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 989 (Pa. 1987) ("this court has acknowledged, but has never had occasion to specifically adopt Section 46 as the law in Pennsylvania."); *Hoy*, 720 A.2d at 753 n.10 (". . . we too leave to another day the issue of whether Section 46 . . . should be the law of Pennsylvania.").  Assuming, *arguendo*, as all other cases regarding this issue have, that intentional infliction of emotional distress is a viable cause of action under Pennsylvania law, the Court finds that defendant is entitled to summary judgment on this issue.

This Count is brought specifically by plaintiff Velma Jackson against defendant. Plaintiff Velma Jackson claims that defendant "mismanaged the entrusted real property into a delinquent property tax status. Defendant then attempted to extort additional funds from . . . Velma . . . to pay for [d]efendant's unauthorized transactions and mismanagement of the entrusted real property." Compl. [ECF No. 1] at ¶ 154. Thus, this caused Velma to suffer from "severe mental anguish, anxiety, nervous shock, embarrassment, shame and humiliation[,]" and to suffer "seizures and related ailments, requiring hospitalization and extensive rehabilitation to regain her speech." *Id.* at ¶¶ 156-57.

The conduct of defendant that plaintiff complains of does not arise to the level of "extreme and outrageous" conduct that transcends all possible bounds of decency. *See Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970) (defendant struck and killed plaintiff's son with car, failed to notify authorities and seek medical attention and buried the body in a field where it was later discovered and returned to parents); *Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236 (Pa. Super. 1981) (defendants intentionally fabricated records to show that plaintiff killed a third party which led to plaintiff being indicted for homicide); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979) (team physician released information that plaintiff was suffering from a fatal disease when the physician was aware that plaintiff did not have the condition). Therefore, it is respectfully recommended that defendant be granted summary judgment on plaintiffs' claim of intentional infliction of emotional distress.

### 5. Count 8: Fraud and Conversion of Property and Funds of Plaintiff Velma Jackson

The tort of conversion has been defined as "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Lanning v. West*, 803 A.2d 753, 759 (Pa.Super. 2002) (quotation marks omitted).

Money can also be the subject of conversion. *Id.* One may incur liability for the tort of conversion by "**[u]nreasonably withholding** possession from one who has the right to it." *PTSI, Inc. v. Haley*, 71 A.3d 304, 313 (Pa.Super. 2013) (quoting *Martin v. Nat'l Sur. Corp.*, 262 A.2d 672, 675 (Pa. 1970) (emphasis in original)).

Because plaintiffs set forth a separate claim for fraud, the court will only discuss whether defendant is entitled to summary judgment on the conversion claim. Plaintiffs' fraud claim will be addressed *infra*. Plaintiffs' legal theory as to their conversion claim is that they expended approximately $20,000 in repairs to the house located on the property, which defendant illegally converted by not transferring the plaintiffs their interest in the property.[9] *See* Compl. [ECF No. 1] at ¶¶ 158-163. Plaintiffs admit that *they* spent their own money for the repairs to the property. They do not claim that defendant somehow gained access to their funds and used said funds to repair the property. There is no evidence of record that the funds were converted *by* defendant and *without* plaintiffs' consent. Accordingly, it is respectfully recommended that summary judgment be granted in defendant's favor on plaintiffs' claim of conversion.

### 6. Count 9: Fraud

To state a prima facie case of common law fraud under Pennsylvania law, the plaintiffs must show: "(1) a representation; (2) material to the transaction at issue; (3) made falsely, with either knowledge or reckless disregard of its falsity; (4) with the intent [of] misleading another person or inducing justifiable reliance; and (5) an injury caused by the reliance." *Bennett v. A.T.*

---

[9] To the extent that plaintiffs' legal theory for conversion somehow stems from the actual property itself, a cause of action for conversion would not apply, as it applies by its own terms only to conversion of chattels. Additionally, plaintiffs have failed to offer any evidence of what improvements were made to the property or how such improvements totaled $20,000. See Pls.' Concise Statement of Material Fact [ECF No. 27] at ¶ 21. However, because defendant does not dispute that an amount of this nature was spent for improving the property, and because it is recommended that defendant be granted summary judgment, this lack of evidence will not be discussed.

*Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 152 (Pa.Super. 2012) (citing *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999)). These elements "must be proven by clear and convincing evidence." *Borough of Morrisville v. Kliesh*, 2014 WL 346589, at *9 (Pa.Cmwlth. 2014) (citing *Pittsburg Live, Inc. v. Servov*, 615 A.2d 438, 441 (Pa.Super. 1992)).

The entirety of plaintiffs' claim for "fraud" is as follows:

> This case involves more than Defendant's honest mistake and more than a single instance of Defendant's bad judgment is involved. Defendant's conduct indicates a broader lack of character and intentional misconduct. Defendant's violations of trust have taken place and occurred over a number of years and have been constant. Defendant employed devices, schemes or artifices to defraud, made untrue statements of material facts or omissions of material facts in order to induce action or inaction on the part of Plaintiffs, in circumstances under which they were made to seem not to be misleading, and engaged in courses of conduct which operated or would operate as a fraud upon all of the intended beneficiaries. Defendant repeatedly made false promises for the purpose of inducing Plaintiffs to act on Defendant's behalf and for no other reason. While failing to disclose material facts to the intended owners, Defendant engaged in fraudulent conduct designed to deprive Plaintiffs and the other intended beneficiaries of their ownership interests in the entrusted real property. Defendant engaged in the false and fraudulent conduct described above with the intent and for the purpose of deceiving Plaintiffs and causing Plaintiffs to lose their interests in the entrusted real property.

Compl. [ECF No. 1] ¶¶ 165-170. Plaintiffs fail to offer any evidence as to what "untrue material facts" were uttered by defendant, or how such facts were said with the intent of misleading plaintiffs or inducing justifiable reliance. These statements are bare legal assertions and conclusory allegations that will not allow plaintiffs to survive summary judgment on their claim for fraud. Accordingly, it is respectfully recommended that summary judgment be granted in defendant's favor for plaintiff's claim of fraud.

### 7.  Count 10: Invasion of Privacy

As to plaintiffs' invasion of privacy claim, they allege that in a series of e-mails, in public documents and other written and oral communications, defendant repeatedly disseminated "false, distorted or misleading information, without just cause, in order to hold Plaintiffs in a false light and subject to public humiliation and embarrassment" in connection with defendant's purported efforts to misappropriate or control plaintiffs' ownership interests in the property and as a result suffered public humiliation. Compl. [ECF No. 1] at ¶¶ 172-73.

The tort of invasion of privacy is made up of four distinct legal theories: "(1) intrusion upon seclusion, (2) appropriation of name or likeness; (3) publicity given to private life; (4) publicity placing the person in a false light." *Marks v. Bell Tel. Co. of Pennsylvania*, 331 A.2d 424 (Pa. 1975). While plaintiffs fail to specify which legal theory of invasion of privacy they seek to proceed with, the allegations in the complaint give rise to two separate legal theories under the invasion of privacy umbrella: publicity given to private life and publicity placing the person in a false light.

Section 652D of the Restatement (Second) of Torts defines publicity given to private life as follows: "One who gives publicity to matters concerning the private life of another, of a kind highly offensive to a reasonable man, is subject to the liability to the other for invasion of privacy." Restatement (Second) of Torts § 652D; *see also Vogel v. W.T. Grant Co.*, 327 A.2d 133, 136 (Pa. 1974) (the Restatement (Second) of Torts § 652D "is in accord with the common-law development of the tort of invasion of privacy in Pennsylvania."). The Pennsylvania Superior Court has set forth four factors which provide the structure for a cause of action for the publicity-given-to-private-life tort: "(1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person, and (4) is not of legitimate concern to the public." *Jenkins v. Bolla*, 600 A.2d 1293, 1296 (Pa.Super. 1992) (citing *Harris*, 483 A.2d at 1384). The

"crux of the tort developed in these cases and described in section 652D is publicity. Without it there is no actionable wrong." *Vogel*, 327 A.2d at 136. Here, plaintiffs' claim for invasion of privacy based upon publicity to private life fails for the following reasons: (1) there is no evidence that defendant made the statements public; (2) the matters did not concern private life; (3) any statement made was not highly offensive to a reasonable person; and (4) to the extent any statements were made, they were of legitimate concern to the public.

First, in support of the "publicity" factor, plaintiffs point this Court to public documents and arguments made by counsel in a prior state court action instituted by plaintiffs against defendant. Plaintiffs subsequently voluntarily dismissed the case before they sought relief in this Court. However, it is undisputed that plaintiffs instituted the state court action against their sister for the same claims that are set forth here, prompting a discussion of the claims. *See Hartman v. Angelo*, 1992 WL 1071380, at *79 (Pa.Com.Pl. May 6, 1992) (where plaintiff made "public the exact information which she now claims caused her injury . . . she cannot later claim they were 'private' because they were disseminated by someone other than herself."). Plaintiffs have failed to identify any specific statement made by defendant in the state court action that would give rise to publicity to a private life cause of action. To the extent that plaintiffs argue that the e-mails sent between the siblings constitutes a public statement, there is no evidence that defendant made those e-mail communications public.

Next, because only matters which concern private life are those which are protected under this tort, "[a] fact contained within a public record is deemed a public fact[,]" and is not a private fact. *Jenkins*, 600 A.2d at 1296 (whether public funds subsidized a boarding house was a matter of public concern). The matters at issue here concern the true owners of the property in

question, and delinquent taxes, both matters of public concern and not private facts as these matters are kept within public records.

Additionally, the fact that defendant was holding the property as her own and her alleged attempts to misappropriate or control plaintiffs' ownership interests in the property would not be highly offensive to a reasonable person. The intrusion must go "beyond the limits of decency. . . . These limits are exceeded where intimate details of the life of one who has never manifested a desire to have publicity are exposed to the public[.]" *Schnabel v. Meredith*, 107 A.2d 860, 863 (Pa. 1954); *see also Jones v. WTFX-Fox 29*, 1993 WL 1156080, at *294-*295 (Pa.Com.Pl. Aug. 13, 1993) (national television broadcast of plaintiff-fugitive who surrendered was not "highly offensive").

Lastly, the statements allegedly made by defendant regarding the ownership of the property, the alleged misappropriation of the property and delinquent taxes are by their very nature within the realm of legitimate public concern. *See Bowley v. City of Uniontown Police Dept.*, 404 F.3d 783, 788 (3d Cir. 2005) (arrests are of legitimate public concern).

Therefore plaintiffs have failed to present sufficient evidence of a "publicity to private life" claim, and defendant is entitled to summary judgment as to this claim.

Additionally, to the extent that plaintiffs' claim a false light invasion of privacy tort, they have not established any evidence to support the elements of that cause of action. To state a cause of action for false light, the plaintiffs must establish "that a highly offense false statement was publicized by [defendant] with knowledge or in reckless disregard of the falsity." *Woodward v. ViroPharma, Inc.*, 2013 WL 1485110, at *6 (Pa.Super. 2013) (citing *Santillo v. Reedel*, 634 A.2d 264, 266 (Pa.Super. 1993); Restatement (Second) of Torts § 652E). "Publicity" is defined as "the matter is made public, by communicating it to the public at large or to so many persons

that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D, Comment a.

Primarily, plaintiffs have failed to identify any recipient of the alleged communications made by defendant. Additionally, and particularly of more significance, it was *plaintiffs* who made statements regarding the ownership of the property public by filing the earlier action in state court. Plaintiffs cannot recover for a claim of false light when they were the parties who publicized the allegedly false information.

Accordingly, because plaintiffs have failed to offer any evidence that defendants have invaded their privacy under any of the applicable legal theories thereunder, it is respectfully recommended that summary judgment be granted in favor of defendant for that claim.

E.  Conclusion

For the foregoing reasons, it is respectfully recommended that plaintiffs' motion for summary judgment [ECF No. 25] be granted in part and denied in part. It is specifically recommended that plaintiffs be granted summary judgment on their claim for an imposition of a constructive trust, and that an accounting be completed to determine the scope of expenditures made in connection to the property and the tax status of the property. It is further respectfully recommended that plaintiffs be denied summary judgment as to all other counts, and that defendant be granted summary judgment on Counts 1, 3, 4, 5, 6, 7, 8, 9 and 10.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules pertaining to Magistrate Judges, the parties are permitted until June 18, 2014 to file written objections to this Report and Recommendation. Failure to do so may waive the right to appeal. Any party opposing written objections shall have fourteen days after the service of such objections to respond thereto.

Dated: June 4, 2014

Respectfully submitted,

/s Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

cc:     The Honorable Cathy Bissoon
        United States District Court
        Western District of Pennsylvania

        Matthew E. Jackson, Jr.
        339 Little Street
        Sewickley, PA 15143

        Velma L. Jackson
        339 Little Street
        Sewickley, PA 15143

        Joseph P. Nigro, Esq.
        *via electronic CM/ECF filing*